IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 3:24-cr-122-RCY |
| | ) |
| WILLIAM THOMAS MORTON, JR., | ) |
| | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS COUNTS NINE AND TEN
FOR MULTIPLICITY AND DOUBLE JEOPARDY**

The United States of America, through its attorneys, Jessica D. Aber, United States Attorney, and Olivia L. Norman, Assistant United States Attorney, hereby submits its response to Defendant's Motion to Dismiss Counts Nine and Ten for Multiplicity and Double Jeopardy (the "Motion") (ECF 40).

For the following reasons, defendant's motion should be denied.

**BACKGROUND**

During the course of a violent crime investigation, agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") utilized individuals who were secretly working for the agents to purchase firearms and illegal controlled substances from individuals selling drugs and firearms in the highest crime areas of the City of Richmond. Among those individuals was the defendant, who brokered firearm sales to the police informant on April 8, 2024, and again on April 10, 2024. Defendant was paid for arranging the firearm sales, that were completed by defendant's codefendant, Raekwon Jamil Mahone, aka "Truck," aka "Baby Truck."

On August 21, 2024, a federal grand jury sitting in the Eastern District of Virginia, Richmond Division, returned a 25-count indictment charging the defendant, Mahone, and

another individual with numerous drug and firearm trafficking related offenses, among them Counts Nine and Ten that charge Mahone, aided and abetted by the defendant with engaging in the business of importing, manufacturing and dealing in firearms, and in the course of such business did ship, transport, and receive firearms, specifically a .45 caliber pistol on April 8, 2024 (Count Nine), and a 9mm pistol, a multicaliber pistol, and a multicaliber rifle, on April 10, 2024 (Count Ten), all in violation of 18 U.S.C. § 922(a)(1)(A).  ECF No. 1.  On August 22, 2024, defendant was arrested on the indictment.

## LAW & ANALYSIS

Defendant argues that Counts Nine and Ten in essence charge the same crime and that as such, Counts Nine and Ten are multiplicitous and violate the Double Jeopardy Clause of the United States Constitution.  ECF No. 40.

The Double Jeopardy Clause protects persons from being "subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  "One aspect of this protection prohibits the government from subjecting a person to 'multiple punishments for the same offense.'"  *United States v. Schnittker*, 807 F.3d 77, 81 (4th Cir. 2015), *quoting Ohio v. Johnson*, 467 U.S. 493, 498 (1984); *Missouri v. Hunter*, 495 U.S. 359, 366-67 (1983).  "This prohibition attaches if the subject offenses 'are in law and in fact the same offense.'"  *Schnittker,* 807 F.3d at 81, *quoting United States v. Crew*, 538 F.2d 575, 577 (4th Cir. 1976); *citing Blockburger v. United States*, 284 U.S. 299, 304 (1932).

"Multiplicity involves charging a single offense in more than one count in an indictment." *United States v. Colton*, 231 F.3d 890, 908 (4th Cir. 2000) (internal quotations omitted). The multiplicity doctrine "finds its roots in the Fifth Amendment's [Double Jeopardy] clause, which assur[es] that the court does not exceed its legislative authorization by imposing

multiple punishments for the same offense.' " *Id*. (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)) (second alteration in original). "[T]he principal danger created by multiplicity is that a defendant will receive multiple punishments for a single offense." *Id*.

"When a defendant is charged with multiple violations of the same statute arising from the same course of conduct, the court must determine what Congress has made the allowable unit of prosecution." *United States v. Shrader*, 675 F.3d 300, 313 (4th Cir. 2012) (internal quotations omitted) (citing *Bell v. United States*, 349 U.S. 81, 81 (1955)). To determine the unit of prosecution, courts "must look to the language of the statute, being mindful that any ambiguity must be resolved in favor of the defendant under the rule of lenity." *Id.; see United States v. Bass*, 404 U.S. 336, 347 (1971). This rule of lenity ensures that criminal liability is not imposed absent fair warning "of what the law intends to do if a certain line is passed" and that "legislatures and not the courts [ ] define criminal activity." *Bass*, 404 U.S. at 348.

Neither the Supreme Court nor any circuit court has addressed the "unit of prosecution" for § 922(a)(1)(A) violations. However, numerous circuit courts have addressed the "unit of prosecution" in § 922(g) violations and some have addressed the "unit of prosecution" in § 922(a)(6) violations.

A. Unit of Prosecution in § 922(g) Violations

With respect to § 922(g) violations, every circuit court to address the question has held that possession is the unit of prosecution under 18 U.S.C. § 922(g) and that possession of the same firearm and/or ammunition is a "course of conduct" that is not punishable as multiple offenses unless possession is interrupted and reacquired. *United States v. Benjamin*, 711 F.3d 371, 378 (3d Cir. 2013) (citing *United States v. Ellis*, 622 F.3d 784, 793-96 (7th Cir. 2010); *United States v. Rivera*, 77 F.3d 1348, 1351-52 (11th Cir. 1996); *United States v. Horodner*, 993

F.2d 191, 193-94 (9th Cir. 1993); *United States v. Jones*, 533 F.2d 1387, 1390-92 (6th Cir. 1976)); *see also United States v. Destefano*, No. 98-2054, 1999 WL 1319192, at * 1 (1st Cir. 1999) (same); *United States v. Hope*, 545 F.3d 293, 296-97 (5th Cir. 2008) (same); *United States v. Jones*, 403 F.3d 604, 606 (8th Cir. 2005) (same). In a footnote to an unpublished decision, the Fourth Circuit declined to adopt this rule on procedural grounds, holding that defendant then at bar waived any multiplicity objection by failure to raise the issue before trial. *United States v. Erby*, 246 F. Appx. 228, 231 n.3 (4th Cir. 2007). However, the Fourth Circuit's rulings regarding multiplicity in the context of 922(g) violations reaches results, consistent with the holdings of circuits that do apply this rule. *See United States v. Dunford,* 148 F.3d 385 (4th Circ. 1998) (holding that a person in possession of a firearm who is both a felon and an unlawful drug user does not violate § 922(g) more than once for each act of possession and that possession of multiple firearms and ammunition at one time constituted only one act of possession in violation of the statute).

Multiple considerations weigh in favor of holding that an indictment charging multiple counts of possession of the same firearm and/or ammunition under 18 U.S.C. § 922(g)(1) is multiplicitous unless possession is interrupted and reacquired. First, the text of 18 U.S.C. § 922(g)(1) makes it unlawful for anyone previously convicted of a felony to "possess" a firearm, *see United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999) (noting that, while it should not be applied rigidly, the "verb test," under which courts look to the verb in a criminal statute to determine the nature of a substantive offense, has value as an interpretative tool), and "possession generally is understood as a course of conduct." *Benjamin*, 711 F.3d at 378 (citations omitted); *see United States v. Mullins*, 698 F.2d 686, 687 (4th Cir. 1983) ("[T]he character of the possession is to be found in the possessor's course of conduct."). Where possession is a course of

conduct, the natural boundaries to set in determining when possession of the same item ends and begins anew are the moments of initial acquisition, interruption, and reacquisition of possession. *See Benjamin*, 711 F.3d at 378.

    B.  <u>Unit of Prosecution in § 922(a)(6) Violations</u>

In the context of § 922(a)(6) violations for lying to obtain a firearm, the Fourth Circuit held that the unit of prosecution was ambiguous from the statute. *United States v. Mason,* 611 F.2d 49, 52 (4th Cir. 1979). It was not clear whether each lie was the unit of prosecution or each form. *Id.* Applying *Bell*, *supra,* the Fourth Circuit determined that because the unit of prosecution was ambiguous, it would apply the rule of lenity and held that simultaneous executions of multiple forms for multiple firearms be treated as only one offense. *Id.* at 53.

    C.  <u>Application to § 922(a)(1)(A) Violations and Defendant's Charges</u>

Turning to the statute at issue, § 922(a)(1)(A) provides that,

> It shall be unlawful for any person—except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce.

Section 921(a)(21)(C) defines the phrase "to engage in the business" of, as found in § 922(a)(1)(A), to mean:

> as applied to a dealer in firearms, . . . a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and

5

> resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms[.]

*See United States v. Conn*, 297 F.3d 548, 553-57 (7th Cir. 2002) (regarding qualifying and admitting expert testimony regarding "personal collection").

Section 921(a)(22) defines the phrase "with the principal objective of livelihood and profit" to mean:

> that the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: Provided, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

In *United States v. Beecham*, 1993 WL 188295 (4th Cir. 1993), the court interpreted these definitions to require the following in order to sustain a conviction:

> The government need not prove that a defendant's primary business was dealing in firearms or that he necessarily made a profit from it (citation omitted). The government show a willingness to deal, a profit motive, and a greater degree of activity than occasional sales by a hobbyist.

*Id*. at *3 (citations omitted). *See also United States v. Shipley*, 546 F. App'x 450, 454 (5th Cir. 2013) (unpublished) (upholding defendant's conviction of § 922(a)(1)(A) even though he suffered a net loss from dealing firearms). *See also, United States v. King*, 735 F.3d 1098, 1106-07 (9th Cir. 2013) (finding sufficient evidence of unlawful dealing); *United States v. Gray*, 470 F. App'x 468, 472-73 (6th Cir. 2012) (unpublished) (same).

Congress has the discretion of determining the allowable unit of prosecution for a federal offense and has done so with regard to § 922(a)(1)(A). The unit of prosecution is each time a person engages in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport or receive any firearm in interstate or foreign commerce. The act that is criminal is acting as a dealer without a license. Each time a person does so, they violate the statute. What is not clear, is whether a person who does so and simultaneously sells multiple firearms will be subject to one violation of the statute or several violations of the statute, or whether a person who violates the statute by an uninterrupted transportation of one firearm spanning multiple days is subject to multiple violations for each day that the firearm is being transported.

Like in the context of § 922(g) and § 922(a)(6) violations, applying the *Bell* rule of construction, to § 922(a)(1)(A) violations, the rule of lenity would dictate that simultaneous violations should be considered one violation. Likewise, one continuous violation involving one firearm should be considered one violation. However, distinct violations, that are not simultaneous and are not involving the same firearm are separate violations. Thus, when a defendant arranges the sale of a firearm for his own personal profit, connects the seller with the buyer, and is paid a brokering fee, he has committed one violation of § 922(a)(1)(A). When the defendant on a separate occasion, again brokers a firearm deal and is again paid a brokerage fee,

7

but this time the transaction involves 3 firearms, defendant has again committed one violation of § 922(a)(1)(A).  Each time the defendant "engages," he commits a new violation of the statute, whether than engagement involves 1 or 50 firearms.  But once the deal is complete, the engagement is finished.  Certainly, if a defendant starts the negotiation for the sale of numerous firearms and that negotiation continues over several days or even months, involving the same firearms, that is one engagement.  But once that deal is done, the next time he engages in a deal involving different firearms, that is a separate act – a separate engagement, not a continuous one -- and thus a separate violation of the statute.

In the present case, defendant is charged in two separate counts with two separate engagements.  The first engagement was on April 8, 2024, when defendant brokered a deal involving 1 firearm and he was paid a brokerage fee.  That is Count Nine.  The second engagement was 2 days later on April 10, 2024, when the defendant brokered a deal involving 3 totally different firearms and he was paid an even larger brokerage fee.  That is Count Ten.  The facts of each engagement are different.  While they are violations of the same statute, the day is different, the firearms are different, the brokerage fees are different.  They are not the same incidents.  They are not a single offense.  Rather, they are multiple offenses.

Thus, for all of these reasons, Counts Nine and Ten are not multiplicitous nor would conviction on both counts constitute a violation of the Double Jeopardy Clause.  Accordingly, defendant's motion should be denied.

D.  <u>Pretrial Dismissal of Counts Nine and Ten is Not the Proper Remedy</u>

Furthermore, even if the charges in Counts Nine and Ten were multiplicitous, the remedy should not be pretrial dismissal of the Counts.  A post-trial remedy by the court, such as vacating or merging the convictions, adequately addresses any multiplicitous issue and preserves the

freedom of prosecutors to seek multiplicitous indictments when instituting prosecutions. *See Ball v. United States*, 470 U.S. 856, 865 (1985); *United States v. Gaddis*, 424 U.S. 544, 550 (1976). Additionally, as a case matures, any multiplicity issue may become moot for reasons apart from a court-imposed remedy such as a jury verdict convicting defendant of only one count. *See United States v. Johnson*, 130 F.3d 1420, 1425.

Allowing the Government to proceed to trial on multiplicitous counts does not violate the Double Jeopardy Clause because "[e]rror only stems from multiplicity when a defendant is punished for multiple convictions on the same offense ...." *United States v. Lawing*, 703 F.3d 229, 236 n. 7 (4th Cir. 2012) (emphasis added). The Court can fashion a post-trial remedy, including merger or dismissal of counts, in the event that the Court determines that the charges in Counts Nine and Ten are multiplicitous. Thus, defendant's motion to dismiss both Counts Nine and Ten should be denied on this ground as well.

## CONCLUSION

For all of the foregoing reasons, defendant's Motion (ECF No. 40) should be denied in its entirety.

Respectfully submitted,

JESSICA D. ABER
UNITED STATES ATTORNEY

By: \_\_\_\_\_//s//_____
Olivia L. Norman
VSB No. 31418
Assistant United States Attorney
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone:  804-819-5400
Fax:    804-771-2316
Olivia.Emerson@usdoj.gov

9